**STATE OF OHIO**
**DEPARTMENT OF EDUCATION**
**IMPARTIAL DUE PROCESS HEARING**

| | | |
|---|---|---|
| In The Matter of: | * | Case No. SE  3156-2015 |
| The Appeal of the | * | and |
| Impartial Due Process Hearing on behalf of , Parent | * | Case No. SE 3168-2015 |
| | * | |
| Petitioner, | * | Monica R. Bohlen State Level Review Officer |
| and | * | |
| Solon City School District Board of Education | * | |
| | * | |
| Respondent. | | |

## FINAL DECISION AND ENTRY

### I. SUMMARY OF DECISION:

The decision of the Impartial Hearing Officer (IHO) is affirmed.

The District fulfilled its Child Find obligations under O.A.C. §3301-51-03. The District's evaluation of Student fully complied with O.A.C. §3301-51-06.  The District's ETR fully complied with O.A.C. §3301-51-06. The refusal of the District to publicly fund the Parent's request for an IEE was proper under O.A.C. §3301-51-05(G)(2). Student is not a student with a disability as defined by O.A.C. §3301-51-01(B)(10). The District provided Parent access to education records as required under O.A.C. §3301-51-04(D)(2).

Further, Parent failed to establish that any failure to receive copies of education records infringed her ability to participate in the ETR planning meeting, ETR meeting or due process hearing. The IHO did not err in dismissing Parent's separate retaliation claim.

1

EXHIBIT H

The District is a prevailing party in cases SE 3156-2015 and SE 3168-2015 pursuant to 20 U.S.C. §1415(i)(3)(B)(II) and  O.A.C. §3301-51-05(K)(18).

## II. PROCEDURAL HISTORY:

This matter comes forward for state level review of the IHO's decision pursuant to an appeal submitted by Petitioner (Parent).

### A.    Due Process Hearing

This matter arises from two due process complaints, the first filed by the District and received by the Office of Exceptional Children (OEC) on July 1, 2015 (Case No. SE 3156-2015) and the second filed by Petitioner and received by the OEC on August 26, 2015 (Case No. SE 3168-2015). These complaints were related and, thus, were consolidated for hearing. There had been a previous due process complaint filed by Petitioner on April 14, 2015. That complaint was considered by the District as a request for an evaluation as Student was a general education student who had not previously been suspected of having a disability. That complaint was subsequently withdrawn by Petitioner.

The issue for hearing in the District's complaint was to confirm the appropriateness of the July 9, 2015 ETR and, if found to be appropriate, for a determination as to whether the District's denial of Petitioner's request for an independent educational evaluation (IEE) was appropriate.

The issues stated in the Petitioner's due process complaint are that Student is being denied a FAPE, has been subject to unwanted bullying and harassment and that the [District] has refused to address the unwanted bullying and harassment, has failed its Child Find obligations, has failed to protect Student from physical and emotional distress, has attempted to cover up incidents at school. The complaint further claimed the [District] has retaliated against Student by refusing to conduct a proper evaluation (MFE), by not providing an IEP, by telling Parent that she had to provide any medical opinions she wanted to be considered or the opinions would not be

2

considered, by not seeking medical opinions of its own, by refusing to provide a Section 504 evaluation, and had further retaliated by threatening to seek fees in a Prior Written Notice dated April 24, 2015. Lastly, Petitioner contends that the [District] failed to produce all records as requested in a records request and prior to any meeting regarding a potential IEP.

As relief, Parents sought an evaluation, an IEP, compensatory education, counseling, outside tutoring, teacher training on bullying, prevailing party, attorney's fees, compensatory and punitive damages, for new concussion protocol to be implemented at the District, and any other remedy the IHO finds appropriate.

The record in this case is voluminous. The record docket detailing all filings and correspondence is eight pages. Numerous motions and responses were filed. Based on the request of Parent in this appeal to review all procedural matters, to the extent that these pre-hearing procedural matters have been raised as Parent's appeal issues, they will be reviewed and discussed here.

Pursuant to a motion by the District, partially opposed by Parent, the IHO consolidated the cases stating that Parent could file a motion to bifurcate issues if needed.

Pursuant to a Motion to Recuse filed on September 21, 2015, Parent requested that the IHO recuse herself indicating that her counsel had filed a "similar brief in an unrelated matter." In her Motion to Recuse, Parent alleged that the IHO was incapable of being impartial and unbiased or, in the alternative, unable to meet the minimum qualifications to be an IHO because she had been retained privately by District counsel to serve as a hearing officer in another case on behalf of a different school district for other matters thus creating a perceived or actual conflict for the IHO to hear the present matter. Parent's counsel also indicated that he had filed a similar brief in an unrelated matter addressing many issues. As support, Parent attached to the one page motion 24 pages of emails from July, 2015. Much of the 24 pages consisted of multiple copies of about ten

3

short emails between District counsel and Parent's counsel about scheduling these other 504 cases, involving other students, for hearing and hearing dates. Procedural matters were the sole discussion. The IHO emailed both counsel asking Parent's counsel to clarify what "unrelated matter" was he alluding to in the motion. The District filed an Opposition to [Parent's] motion to recuse.  Parent never supplemented the Motion to Recuse as requested.

The IHO denied the Motion to Recuse finding no basis to the Parent's request, as the IHO had agreed to serve as a hearing officer in the cases involving both counsel and that IDEA hearing officers are typically hired by school districts in 504 cases under separate contracts as they receive annual IDEA training that frequently includes coverage of 504 case updates. The IHO also noted that the mere fact that such hearing officers are paid by the school district for 504 hearings does not render them biased because it is no different than the way they are paid under IDEA hearings, pursuant to O.A.C. 3301-51-05(K)(9)(c)(ii).

On October 6, 2015, the IHO gave Parent until October 20, 2015 to submit a proposed list of issues for hearing and directed the Parent to set forth the issues with specificity and identify which issues Parent wanted to bifurcate and the reasons therefore. The District was given an opportunity to respond. On October 20th, Parent filed her List of Proposed Issues and Motion to Bifurcate, setting forth seven issues:

1. Was [Student] denied FAPE under IDEA and 504?

2. Was [Student] subjected to unwanted bullying and harassment?

3. Did the District violate its Child Find obligation under IDEA or 504?

4. Did the District unlawfully retaliate against the Student in violation of IDEA or 504?

5. Did the District fail to provide access to all educational records prior to any meeting relating to any potential IEP or outside of required timelines?

6. Was the District's Multi-Factored Evaluation (MFE) a proper evaluation and did it

4

encompass all of [Student's] areas of need.

7. Was the District's denial of an IEE proper?[1]

The Parent requested that Issues 1, 2, 3 and 4 be bifurcated and that Issues 5, 6, and 7 be heard prior to Issues 1, 2, 3, and 4. Parent also stated she needed an IEE to contest the MFE.

On November 4, 2015, the District filed a Motion to Dismiss. Parent's attorney responded by an email stating he did not intend to respond because it was "designed to simply increase Parent's attorneys' fees and unreasonably protract the final resolution . . .[t]here is no such mechanism as a 'motion to dismiss' in a due process hearing . . . instead, the only thing authorized is a sufficiency challenge, which the Respondent has already asserted and failed to prevail on."

On December 2, 2015, the IHO, noting that Parent had not responded to the District's motion, ruled that: 1). she had no jurisdiction over 504 claims, 2). because Student had not been identified as a student with a disability and had no IEP she did not have jurisdiction to hear any independent claims relating to bullying and/or harassment, and 3). she had no jurisdiction over retaliation claims, so the IHO dismissed those three issues. The IHO again ordered Parent to file at the Disclosure Conference an Amended List of Issues to address with specifics how Student was denied FAPE, how the District violated its child find obligations, when were requests made by the Parent to provide access to educational records, when was access denied and to what records were access denied, how was the MFE improper and what areas of the student's needs did it not encompass.

Prior to the disclosure conference, Parent submitted a witness list with 40 witnesses. On December 6, 2016, Parent also filed a Motion in Support of Jurisdiction Regarding Retaliation, a Motion to Shift Burden of Production to District, and a Motion for Sanctions for Frivolous Conduct complaining that the District belatedly produced documents to Parent. At the disclosure

---

[1]  In her Decision, the IHO switches Issues 3 and 4. Decision, p. 7.

5

conference, the IHO issued a Protective Oder regarding the confidentiality of test protocols and directed the protocols be provided to Parent's counsel by December 8 2015. Also, the District asked that subpoenas be issued to medical providers that were on its witness list as well as Parent's. In a discussion about the medical providers, Parent objected to the subpoenas, but planned on utilizing certain medical records as evidence.

The IHO ruled that the District had a right to call the medical providers as witnesses and that a refusal to allow the District to call those witnesses and at the same time allow the Parents to use medical records from those providers would impede the District's right to cross-examine the witnesses under O.A.C. 3301-51-05(K)(11). The IHO noted that any records produced by the subpoenaed witnesses would be produced first at the hearing and would be reviewed by the IHO prior to inspection by the District to alleviate the Parent's concern over relevancy and privacy. The District was instructed not to serve the subpoenas if the Parent revised her witness list prior to December 21, 2015 to exclude those witnesses.

Also at the disclosure conference and over the objection of the District, the IHO gave Parent additional time to prepare her exhibit book and modify her witness list, if needed. Parent's counsel was further granted until December 21, 2015 to identify any documents not produced. Parent's counsel stated that Parent did not have an IEE because she could not afford one.

After the disclosure conference Parent amended her witness list to add an additional ten witnesses for a total of 50. Parent did not delete any of the medical providers. The District then issued the subpoenas.

Parent's counsel emailed the IHO on December 15, 2015 with a litany of requests and complaints. He requested that Parent be allowed to submit exhibits electronically or, in the alternative, produce only one copy at the hearing, that the deadline for submission of exhibits and issues be extended until five days prior to the commencement of the hearing, that the issues as

outlined be allowed to stand and that no further clarification of the issues be required, that all issues be addressed on the record, and that additional hearing dates be added and/or for the IHO to reconsider her ruling on the motion to bifurcate.

On December 16, 2015, the District filed memoranda in opposition to Parent's Motion in Support of Jurisdiction Regarding Retaliation and her Motion for Sanctions for Frivolous Conduct.

On December 21, 2015 the IHO issued an order granting Parent until December 28, 2015 to submit her Exhibit book to the District, ordering Parent to comply with all other orders and directives from the disclosure conference, denied all other requests and specified that all further requests were to be in written motion form. On the same date, the District submitted its Motion to Vacate Order Re: Email Request for Extension and Parent requested the issuance of approximately 38 subpoenas. The IHO executed the subpoenas and returned them to counsel on the same date.

Next the District filed a Motion to Compel Clarification of Issues and a Motion to Quash Subpoenas concerning certain witnesses. On December 24, 2015, Parent filed a List of Proposed Issues, expanding the previously submitted issues from seven to eight with numerous sub-. categories under Issue 7.[2]

On December 28, 2015, Parent's counsel sent the the District and the IHO a box of Parent's Exhibits totaling over 3,500 pages, compiled into rubber banded groupings of eight exhibits, and were not in a book or binder. Other than two of the groups identified as Petitioner's, the rest were described as: "Untimely documents produced by the [District]" (91 pages), "Very untimely documents produced by the [District]" (499 pages), "Super untimely documents produced by the [District]" (1,856 pages), "Respondent's binder exhibits" (542 pages), "Respondent's Disclosure of Educational Records" (136 pages).

Other motions were filed that are deemed not be be germane to this appeal.

---

2  Due to its length and fact that it was later modified, it will not be reprinted here but can be found in the record as submitted and in the IHO decision at pages 14-17.

By order dated December 29, 2015 this IHO decided that there was no independent claim for retaliation under IDEA but that conduct that could be described as retaliatory that affects or impedes rights under IDEA may be used as evidence to the extent that there was a nexus between the complained of conduct and the MFE and/or Child Find obligations.

After the issuance of the subpoenas to the medical providers of Student, the District advised the IHO that these providers stated they would not comply with the subpoenas unless Parent signed a medical release. This started a long tangled process between the parties based on Parent's refusal to sign releases. The District filed a Motion to Compel Execution of Release or Limit Introduction of Evidence, arguing that the subpoenas were meaningless without the releases and, if Parent is not compelled then she must be barred from using the records that had just been provided to the District on December 28, 2015.

On January 2, 2016, Parent filed an Objection to All Prehearing Motions and Orders, questioning the authority of the IHO to change the five-day disclosure rule, requiring a party to submit any writings, order the form of exhibits, order paper copies of disclosure, order prehearing statements, require motions in pleading form, hear or seek any motion prior to the hearing, issue any order unrelated to the dates and times of the due process hearing or disclosure conference. Parent further argued that due process hearings are intended to be informal and easily accessible and any form of motion practice has a chilling effect and would silence parents and prevent them from being able to enforce their rights. Finally, the Parent argued that the IHO had no ability to allow for post-hearing briefs and the decision had to be reached *in* hearing.

Parent also filed a Notice to Seek Reimbursement of Costs by which she sought reimbursement for the cost of photocopying, placing the exhibits into binders and mailing their exhibits. The District filed a Motion In Opposition to Parent's Notice Regarding Costs maintaining that fees and costs could only be recovered by a prevailing party under IDEA.

8

At 2:56 p.m. on January 5, 2016, the day prior to the commencement of the hearing, scheduled for January 6, 2016, Parent's counsel notified the IHO and opposing counsel that he "may be getting ordered to appear for hearing" in the Summit County Court of Common Pleas and that his co-counsel would not be able to cover the due process hearing because he had his own scheduled hearings that day as well. He advised the IHO he would have to leave at 11:00 a.m. (a full day hearing was planned). As a result, the IHO canceled the January 6th hearing date and required a 10:00 a.m. telephone conference to discuss this matter further and required Parent's counsel to document the conflicts of his and his co-counsel. At 10:27 p.m. Parent's counsel then advised the IHO that he was unable to attend the telephone conference due to a previously scheduled meeting at 10:00 a.m.

On January 6, 2016, the IHO made numerous efforts to reach Parent's counsel for the telephone conference and was finally able to reach him at 11:15 a.m. Based upon the teleconference, the IHO issued an order giving Parent's counsel additional time to provide any further documentation to support their unavailability for the trial and scheduled teleconference. During the teleconference Parent's counsel also stated they had now prepared an Exhibit Book and had eliminated some of the documents. District counsel expressed that she had prepared for the hearing based on the prior exhibit box (3,500 pages) sent by counsel and would need additional time to review this Exhibit Book. The IHO vacated the January 7th hearing date and additional hearing dates of February 10 and 19, 2016 were added.

The IHO's order also granted the District's Motion to Compel Execution of Release or Limit Introduction of Evidence by a certain date or Parent would be prohibited from introducing certain medical records. The order also further advised Parent's counsel that the failure to abide the IHO's orders, show disrespect to the IHO and or opposing counsel or engaging in other conduct deemed frivolous, misleading or unnecessarily causing a delay in the proceedings may result in

9

sanctions.

On January 6, 2016, Parent's counsel submitted a Notice in response to the IHO's request for documentation, indicating a court order directing him that his request for a continuance in that matter was denied and he was to appear in that court to proceed on his case as originally scheduled. It did not reflect when he first knew about the conflict with the due process hearing nor did it explain the delay in notifying the IHO about the conflict. Parent's counsel also stated he would be withdrawing because his representation may bias his client "due to the previously raised perception of conflict or bias."

On January 8, 2016, Parent requested execution of 49 revised subpoenas, including outside medical providers. The IHO executed the subpoenas the same date and also issued an Order Re: Motion to Compel Execution of Releases directing execution of releases for the subpoenaed medical and therapeutic providers by January 15, 2015[3] at 3:00 pm or Parent would be barred from using records relating to that provider.

Later that day, Parent filed a Motion to Clarify this IHO's Order of January 8, 2016 and asked that the releases be limited to two years and expressed concerns over revocation of the releases. On January 14, 2016 the IHO issued an Order Clarifying the issues related to the releases that the Parent was to execute and permitting the substitution of certain requested language contained in the releases.[4] Additional filing by both parties concerned these releases.

On January 25, 2016 Attorney Kristopher Immel entered an appearance on behalf of Parent as co-counsel with Daniel Bache. Attorney Wallace did not formally withdraw.

On January 26, 2016, the day before the hearing was to commence, the IHO received an e-mail at 9:13 pm that the Parent had appealed the IHO's orders regarding the signing of the releases.

---

3  The IHO acknowledges that this date was a clerical error and should have stated 2016. Neither party contended that there was any confusion over the date.
4  This Order was dated January 6, 2016, but was in fact issued on January 14, 2016.

10

Later that same night, the IHO ruled that there was no mechanism for a party to appeal an order issued in a due process proceeding when the IHO had not rendered a final ruling on the merits of the case, concluding that the matter should not be stayed and the hearing would go forward the following day. The IHO also noted her previous statements to the parties that all pending motions would be addressed at the beginning of the hearing.[5]

At the start of the hearing, the IHO gave Parent another opportunity to reconsider her position on signing the releases, but after consultation with her current counsel and a teleconference with her prior counsel, she persisted in her refusal to sign the releases and was not permitted to use medical records of those providers because it would limit the ability to cross-examine the author of the document. The IHO also overruled Parent's Objection to All Prehearing Motions and Orders, and advised Parent that the issue that Student was denied FAPE was too broad and would not go forward, and after discussion narrowed the issues for hearing to IDEA claims of Child Find, whether the District denied Student FAPE, denial of Parent's meaningful input, access to records, and the appropriateness of the MFE.

The IHO again clarified that she had no jurisdiction over any retaliation claim but if the conduct impacted Child Find it could be relevant.

On February 1, 2016, Parent counsel, Kristopher Immel filed a Notice of Withdrawal of Counsel stating he was withdrawing as counsel.

On February 17, 2016, the District filed a Motion in Limine pertaining to the Parent's intent on calling one of the medical providers, Laurel Greene, as a witness. The IHO sustained the Motion, again reminding Parent and her counsel that she had elected not to sign the releases.

The IHO granted three joint requests for extension of time. The due process hearing took

---

5  This SLRO resolved Parent's previous appeal by an Order Dismissing Appeal on February 26, 2016, finding that there is no right to a state level review from an IHO's interlocutory orders and, thus, the SLRO has no jurisdiction in the matter which was remanded to the IHO for further action.

11

place on January 27, 28 and 29 and February 19, 24, and 26, 2016.  Both parties filed post-hearing briefs by April 8, 2016.

On April 29, 2016, the IHO issued her decision, finding that the District fulfilled its Child Find obligations, that the District's evaluation of Student and its ETR fully complied with the Ohio regulations, that the District's refusal to publicly fund the Parent's request for an IEE was proper, that Student is not a student with a disability, that the District provided Parent access to all education records, and that Parent failed to establish that any failure to receive copies of education records infringed her ability to participate in the ETR planning meeting, ETR meeting or due process hearing. Further, the IHO found that the District was a prevailing party.[6]

### B.    State Level Review

On June 13, 2016, the Petitioner appealed the decision of the IHO, received by the ODE on the same date, asserting as grounds for appeal as follows:

> "The Decision dated April 29, 2016 and by email the same day, is not supported by reliable, probative and substantive evidence and is not made in accordance with existing law. As such, the Petitioner seeks a full de novo review of the issues decided, all legal conclusions, and all findings of fact. Petitioners (sic) continue to seek exhaustion under the IDEA in order to pursue their claims under the [ADA], 42 U.S.C. §1983 and Section 504 of the Rehabilitation Act of 1973 and any other Federal or State provisions.
>
> Additionally, Petitioner renews the objection regarding the [IHO] and her continued refusal to recuse herself . . . The [IHO should have recused herself due to the actual or perceived conflict or bias."

A Scheduling Order issued on October 3, 2016, granting the parties until 6:00 pm on June 23, 2016 to file and serve all motions electronically and scheduling the decision due date of July 13, 2016. On June 23, 2016, Parent filed a Motion to Supplement the Record and to Submit Brief and to Extend Decision Deadline, seeking a long extension for a decision due date of November

---

6 The IHO determined that she did not have jurisdiction to sanction either Parent or her counsel for conduct during the proceedings by awarding attorney fees to the District, but deferred to the courts on that issue.

12

11, 2016 with a proposed extended briefing schedule and, in addition, sought the opportunity to submit additional evidence, evidence that was improperly kept out of the hearing and would be necessary for the SLRO to properly rule. The District filed a Motion for Extension of Time and Request for Briefing Schedule and a Motion to Dismiss Parent's Notice of Appeal.[7] On June 28, 2016, Parent filed a Response to Motion to Dismiss or, in the Alternative, Motion to Amend Notice of Appeal.

An Order Extending Time was issued on July 6, 2016, setting a new decision deadline of October 24, 2016 to allow for the filing of briefs and noting that it was based on the fact that it was Parent's appeal, that there was no opposition to her request for separate briefs, and the District had referred to an "extensive administrative record." A briefing schedule was included.

Also, on July 6, 2016 an Order on Pending Motions was issued, overruling the District's Motion to Dismiss Parent's Notice of Appeal based on Parent's minimal statement of grounds in her Notice of Appeal, and granting Parent's Motion to Amend Notice of Appeal. Parent's amendment states the following grounds for appeal:

1. [Petitioner] disagrees with the findings of fact and conclusions of law of the [IHO]:

2. [Petitioner] disagrees with the decision of the IHO regarding the OAC 3301-51-05(K)(11)(a)(ii);

3. [Petitioner] disagrees with the IHO's decision regarding FAPE;

4. [Petitioner] disagrees with the IHO's decision regarding unwanted bullying and harassment;

5. [Petitioner] disagrees with the IHO's decision regarding retaliation;

6. [Petitioner] disagrees with the IHO's determination and application of child find;

7. [Petitioner] disagrees with the IHO's decision regarding access to

---

7  The District's Motion was mistakenly mailed on June 23, 2016, instead of being sent electronically, but was allowed as timely.

13

educational records;

8. [Petitioner] disagrees with the IHO's determination as to the [MFE] and whether it properly encompassed all of Student's needs;

9. [Petitioner] disagrees with the IHO's decision whether the District's denial of the IEE was proper;

10. The Decision is not supported by reliable, probative, and substantive evidence and is not made in accordance with existing law.

The Order also addressed Parent's Motion to Supplement the Record, finding that the Parent's description of the proposed evidence was inadequate and holding that motion in abeyance until such time as Parent files a Statement of Additional Evidence that will describe the additional evidence, identify the portion of the record where such evidence was not allowed, and state whether such evidence was proffered during the due process hearing. Parent was allowed to file such a statement by July 20, 2016 and, if filed, the District was allowed to file a response by July 27, 2016.

On July 1, 2016, the District sent by mail a Reply to Parent's Response to Motion to Dismiss or, in the Alternative, Motion to Amend Notice of Appeal. This was received by the SLRO on July 7, 2016.[8] On July 12, 2016, an Order Striking Appellee's Reply to Parent's Response to Motion to Dismiss or, in the Alternative, Motion to Amend Notice of Appeal was issued based on the District's filing of the reply outside of the allowed due date which would have been electronic service by July 1, 2016.

Parent filed her Statement of Additional Evidence on July 20, 2016 and the District timely filed its Reply and Opposition to [Petitioner's] Statement of Additional Evidence. Parent seeks to have all of the items that were brought to the Due Process hearing and provided to the [IHO] and the District as potential exhibits supplemented to the record and, in the alternative, Parent

---

8  Between July 1st and July 7th occurred a weekend and a Monday holiday.

14

described five documents and the testimony of one witness, Laurel Greene (nka Laurel Kaiser). Parent argues that hearing officers are not imbued with the power to prevent the introduction of evidence other than that which is not disclosed properly five (5) days prior to the hearing. On August 9, 2016, an Order on Motion to Supplement the Record issued, disallowing the additional evidence proposed by Parent for the reasons that the evidence was either not offered as evidence at the hearing (described as "all of the items brought to the Due Process hearing and provided to the [IHO] and the [District]"), is evidence that was offered and was properly excluded (documents related to the violation of the IHO's order concerning the signing of releases, including the testimony of Laurel Kaiser), or is otherwise not necessary for this state level review.

On August 15, 2016, Parent filed a Request for Extension of Time for Filing Briefs and Time for Decision seeking an additional 30 days based on his numerous court appearances, many of which were scheduled after the brief schedule was set. A Second Order Extending Time was granted on August 22, 2016, and on August 23, 2016, based on the receipt by U.S. Mail of the District's Objection to [Petitioner's] Request for Extension of Time for Filing Briefs and Time for Decision. an Amended Second Order Extending Time was issued, extending the date for the decision to November 7, 2016 and revising the briefing schedule to give Petitioner additional time. Both parties filed their briefs in a timely manner and Parent did not file a reply brief.

### III. FINDINGS OF FACT:

The IHO made numerous and thorough findings of fact, supported by citations to the record. Parent asserts a broad challenge to the IHO's findings of fact, but the factual disputes stated in her brief consist solely of facts asserted by Parent about her daughter's physical injuries and mental health. Based on Parent's assertion, this SLRO will make independent but abbreviated findings of fact that are pertinent to Parent's appeal issues.

The facts pertinent to the due process hearing took place in the 2013-2014 and 2014-2015

15

school years.

**2013-2014 School Year**

Student has lived with her Parent in the District since Kindergarten. Tr. 1401-1402. District Ex. 1, p. 4. During this school year, Student was enrolled in the seventh grade in the District school and was a general education student. District Ex. 21.

In the Ohio Achievement Test given this year, Student scored within the accelerated range in reading achievement and "above average" in the acquisition of vocabulary, reading process and informational text. In math she performed within the advanced range.  District Ex. 9, p. 37A-37B. Her end of year grades in academic subjects were Social Studies (C+), Mathematics (B+), Science (C+), English/LA (B), and French (B). She also earned an A+ in Chorus. Tr. 1264;  District Ex. 21.

An incident occurred at school on September 17, 2016. Student was struck in the head by a locker door. She was leaning into her locker when another student slammed the door shut. Tr. 327-329, 1403-1406, 1418. Student's parent was concerned that the incident was not being properly investigated by the school and reported the incident to the police. The local police department investigated the incident and took no further action. The police did report to Parent that the offending student was being disciplined. Parent Ex. 9; Tr. 1406, Tr. 1513-1514.

Student was absent for three days as a result of a concussion from the locker incident, and then resumed normal activity for the rest of the school year. The District was provided a doctor's note confirming her concussion and the recommendation that she be provided extra time to catch up on homework and tests and complied with those requests. District Ex. 9, p. 37B, Ex. 25, p. 151; Tr. 326-328, 1418.

Student played volleyball for the seventh grade team as well as for a club league during that year. She also participated in the Conference Tournament as well as played for the entire club volleyball season except for a period in March, 2014 when she sat out because of another injury

16

during a club game. Tr. 1516-1517.

During the hearing, Parent claimed that Student experienced a second concussion but there was no notification to the school about that. Later in August, 2014 when Parent and Student completed an OHSAA form in order for Student to participate in athletics at the school the following year Parent reported only one concussion and that one occurred in October, 2013, believed to refer to the one that actually occurred in September, 2013. No documentary evidence was produced at the hearing confirming a medical diagnosis of this concussion. Parent failed to substantiate a second concussion during seventh grade. Tr. 334, 1415; District Ex. 27, p. 155.

**2014-2015 School Year**

During this school year, Student was enrolled in the eighth grade in the District school and was a general education student. Tr. 651; District Ex. 9, p. 37A and Ex. 22, p. 96.

On October 1, 2014, during volleyball practice for the school team, Student was struck in the head by a volleyball. Student informed her coach that she was fine and continued practice without complaint. Student was seen by her usual medical provider, Joan Paskert, CNP, on October 6, 2014 and Parent submitted Ms. Paskert's letter to the District. The letter referred to the appointment and advised the school to "let Student go to the nurse's office to rest if she becomes symptomatic" and to "allow her not to take any tests until she is reevaluated on Wednesday." District Ex. 35, p. 238 and Ex. 28.

On October 8, 2014, Student was seen by a pediatric neurologist with Akron Children's Hospital who diagnosed Student with a mild brain injury (concussion) and recommended restrictions both in school and extra-curricular activities. Tr. 428-429; District Ex. 29, p. 168-169. The neurologist further recommended that Student attend only half days of school until October 13, 2014, no tests for one week, untimed tests, extra time to turn in assignments, reduced workload when possible, and consideration of reduced makeup work, and access to rest or the nurse's office

17

if symptoms worsened during school. District Ex. 29, p. 168-169; Tr. 427-428, District Ex. 9, p. 37B and Ex. 28, p. 167.

Kelly Amstutz, the school counselor, notified teachers and other District personnel about the concussion as well as the restrictions and accommodations and made adjustments to Student's schedule to accommodate the temporary half-day limitation. Tr. 469-471, 525-527, 805, 886-888, 1572-3; District Ex. 35, p. 230, 236. Student returned to school full time on October 18, 2014. Tr. 430; District Ex. 35, p. 240. Student was physically cleared to participate in volleyball in November, 2014, and started back on a limited basis to her club volleyball team in December, 2014. Tr. 1521-1522, 1525. Parent perceived her daughter to be a little depressed and overwhelmed at this time. Tr. 1525;  Parent Ex.19, p. 145.

Student was taught by an interdisciplinary team this year in Social Studies, Language Arts, Math and Science. This team contacted each other first if any of them noticed a problem with one of their students. Tr. 229-230. The team described Student as pleasant, cooperative, easy to work with, participated well in class, provided correct answers, was quick to take redirection,   . independently initiated and completed assignments, and was socially appropriate in class and with peers.  However, her homework performance was not consistent and her teachers worked with her to help her catch up and Student was very responsive to the help. In Math, her teacher noticed a change in her class participation as the year progressed. Attendance had a large impact on her grades according to her teachers. Tr. 231, 232-234, 236-238, 249, 270, 515, 518-519, 520-522, 580, 788-789, 802-804, 879, 890-894, 1178-1181.

Student also took Health/Physical education and French. Her French teacher described her as participating, always did her assigned work, worked appropriately with groups, sustained attention to task and did not present any behavior concerns. Tr. 1204-1209. Her Health/Physical education teacher described her as happy and fun in class and she interacted well with peers. He

18

did notice she became frustrated when she was not allowed to participate in physical education and sports because of her concussion. Tr. 466-468, 1204-1209.

Student's grades declined this year. Her end of year grades in academic subjects were Social Studies (C+), Mathematics (D+), Science (C), English/LA (C), and French (C). In Health/Physical education, she received a B+. District Ex. 22, p. 96. This was due in part to a change in the curriculum this year. This school year, the eighth grade curriculum for Language Arts, Math and Science changed significantly due to the shift to the Common Core (PARCC), particularly Math. Rigor increased and, as a whole, Student grades overall declined and more students were placed in an intervention program at the school called The Pyramid. Tr. 510-511, 790-792, 860-866;  District Ex. 9, p. 45-46.

The Pyramid is the District's response to intervention program (RTI). It systematically monitors Student progress and provides a means to intervene when a student shows a weakness in the classroom. The Pyramid had four levels, called tiers, with Tier 1 being the lowest level of intervention. Student was placed in Tier 1 of the pyramid for Language Arts, Social Studies and Math and after short stays she responded well to the interventions and moved out of the pyramid. She worked with the intervention specialist, Ms. Winograd, Tr. 82-84, 298-299, 511-512, 865, 878-883, 937-940, 1080-1081; District Ex. 22, pp. 115-116, Ex. 42, pp. 432-437, and Ex. 43, pp. 438-443.

Student had increased absences this year. She was absent 6.5 days in the first quarter, 7.5 days in the second quarter, 8.5 days in the third quarter, and 4.5 days in the fourth quarter.  District Ex. 22, p. 96. On April 7, 2015, the District issued a letter to Parent stating that as of March 27, 2015, Student had at least seven days of parent-excused absences. After ten days of  parent-excused absences the District requires a doctor's note for the absence to be excused. Also, the letter informs parents that a prior parent-excused absence that was actually due to a doctor visit may be

19

changed with the production of a doctor excuse for that past date. Tr. 1518-1519; District Ex. 34, p. 203.

The District administered the state achievement test to eighth grade students in the Spring of 2015. The sections on Math, English/Language Arts/literacy were PARCC assessments, but the Science test was not. Student's Science score placed her in the "Accelerated" range, the second highest of five tiers. Student's scores placed her in Level 4 in Math and English/Language Arts/literacy, also the second highest of five levels, described as "met expectations." District Ex. 24, pp. 145-150.

On or about April 15, 2015, the District received a due process complaint submitted by Parent. Tr. 94;  District Ex. 5.[9] On April 24, 2015, the District sent a PWN to Parent responding to the complaint. In this, the District stated its interpretation of this complaint as a request for an evaluation. The PWN noted that Parent had never asked for an evaluation and Student had not been suspected of having a disability by any of her teachers or by the school psychologist. Included in the PWN was a sentence stating that the District "reserves the right to seek fees in a court of competent jurisdiction and, through this response, places the parent and her counsel on notice of the District's intent to seek fees pursuant to 20 U.S.C. 1415(i)(3)(B)(II)(III)." Tr. 941-943, 963; District Ex. 6, p.20.

The school psychologist, Ms, Root, a 13-year employee of the District, commenced preparation for the evaluation (MFE). First, she made several attempts by emails and phone calls, to reach Parent to schedule an evaluation team planning meeting from April 23rd to April 28th. Tr. 935-936, 943-944; District Ex. 36, p. 42. Because Parent had not responded, on or about May 6, 2015, the District sent a Prior Written Notice (PWN) to the Parent, detailing the status of the District's efforts to contact Parent after the filing of the due process complaint to discuss the

---

9  This initial complaint was later withdrawn by Parent.

evaluation and obtaining parental consent for the evaluation. A copy of Whose IDEA Is This? was included. Tr. 944; District Ex. 12.

On May 20, 2015 the District emailed Parent an invitation for the evaluation planning meeting, scheduled for May 21, 2015. At Parent's request, the team agreed to hold the meeting by telephone. Tr. 947-948; District Ex. 16, p. 80-81.

In addition to Ms. Root, attending the meeting were one of Student's regular education teachers, Ms. Berkley, the intervention specialist, Ms. Winograd, the principal, Ms. Green, and District counsel. Participating by phone were Parent and her legal counsel. Parent did not object to any of the participants, nor did she ask that anyone else participate. Unbeknownst to the team, and without any consent, Parent recorded the planning meeting. Tr. 322-323, 948-949, 957; District Ex. 57.

At the meeting, Parent reported that Student had been diagnosed with anxiety, depression and PTSD and that she had trouble focusing. Further Parent reported that Student had experienced four concussions. Based on these concerns of Parent, the team discussed pertinent areas of disability that could be assessed, traumatic brain injury (TBI), due to concussions, emotional disturbance (ED), and other health impairment (OHI), due to Parent's concerns about focus and attention within the classroom and work completion. The team explained each of those areas to Parent. The team reviewed the planning form with Parent. Tr. 361-378, 952-964; District Exs. 8 and 57.

The team also agreed to assess intelligence using the WISC-V as it gave specific information that would be useful to determine working memory and processing speed which were areas where one would be expected to see a weakness from lingering effects of a concussion. The team also agreed to measure academic skills using the Woodcock-Johnson Skills of Achievement, 4th edition. Tr. 361-378, 954-958.

21

To measure classroom-based evaluations and progress in the general curriculum, the team decided to use the data from Student's work samples. To assess social and emotional status, the team determined that the use of the BASC-II scales would be advantageous as that tool contained teacher, parent and student components and would provide a well-rounded picture. Tr. 959.

The team also determined that classroom observation in the school setting would be an important component of the MFE for a student who might have a TBI or who was struggling with processing speed or working memory. Ms. Root was identified as the person who would do that. Tr. 962.

Parent did not object to any of the chosen assessments nor request that any particular individual complete any assessment. During the meeting, Parent asked if there was anything that could be done to improve Student's grades. Ms. Berkley and Ms. Winograd responded with suggestions including completing assignments. Tr. 954-957, 961.

During the meeting, Parent's attorney reported that Student was having some suicidal ideations. Ms. Root offered to conduct a suicide assessment. Neither the parent nor her counsel responded to that offer. Parent's counsel offered to provide medical records or other documents related to the diagnoses reported by Parent. District team members accepted that offer indicating that the District only had documentation as to two concussions and requested documentation about the two other concussions reported by Parent. Parent's counsel said they would be provided and requested an email reminder be sent to him to provide the information. Tr. 368-369. 963-964, 1037; District Ex. 8, p. 30.

On May 21, 2015, the District sent a PWN to Parent, detailing what occurred at the meeting, and a copy of the ETR planning form and Consent for Evaluation by email to the Parent for signature. Parent did not respond, so on May 27, 2015, Ms. Root reached out to Parent by phone and with another email. On May 28, 2015 the District received the signed consent to

22

proceed with the evaluation. Tr. 965, 968-969, 970-971; District Ex. 8, pp. 30-31, 33-35.

The evaluation proceeded and on June 24, 2015 the District sent out a PR-02 indicating the evaluation meeting would occur on July 9, 2015. A PWN and a third PR-02 were issued on June 30, 2015. The PWN documented the Parent's failure to provide potentially relevant diagnostic information to the District, as well as to propose that the District conduct a suicide risk assessment of Student. Further, the PWN reiterated the history of the evaluation, including that Parent had not ever requested an evaluation (other than her due process complaint), nor had the District ever suspected that an evaluation was necessary. The PWN also stated that Parent's counsel had informed the District on June 8, 2015 that a comprehensive medical report would be available on June 9, 2015 that would document Student's four concussions and emotional health issues, including suicidal ideations, and TBI. When this report was not forthcoming, Parent's counsel later informed the District that it would not be provided to the District because of "confidential issues" that "the family does not desire to share" and, further, counsel discouraged the District from talking to Student about her suicidal thoughts. The third PR-02 added District counsel to the list of attendees as Parent had indicated that her counsel would attend. Tr. 409-413, 1036-1040; District Exs. 17, 18, 19 and 35, pp. 360-364.

An evaluation meeting was held on July 9, 2015. Present were Parent, her attorney, Ms. Gale, Mr. Hatteberg, the principal/district representative, Ms Root, Ms. Winograd, and two Board counsel. Unbeknownst to the team, and without any consent, Parent recorded the meeting. Tr. 415-417, 1038, 1040, 1285, 1286-1381; District Ex. 9, p. 57, Ex. 11, Ex. 15, Ex. 17, Ex. 18, Ex. 19, p. 30, and Ex. 58. Stipulation, Tr. 33.

During the meeting the proposed evaluation team report (ETR) was reviewed section by section. Student was cooperative, focused and attentive throughout all testing. The WISC-V assessment included three additional subtests to obtain information on working memory and

23

processing speed. The results indicated that Student scored average to high average skills in all areas assessed, with average scores in working memory and high average scores in her processing speed. The WISC-V scores indicated Student had no need for accommodations or modifications to the regular education curriculum, that she had the capabilities of progressing withing that curriculum without modifications and that her progress could be measured in the same way and in the same intervals as her regular education peers. Tr. 998-1003, 1286-1381; District Exs. 9, 15 and 58.

The Woodcock Johnson Achievement Test, assessing Student's academic achievement, demonstrated Student had the academic skills necessary to progress in the regular education curriculum and demonstrated no need for special education interventions or accommodations. Tr. 1008-1011; District Ex. 9, pp. 41-44.

Ms. Root also conducted a semi-structured interview of Student and an observation in her language arts class. She observed Student on task working with another student. She also observed Student in the lunchroom and didn't see anything concerning except Student did not eat lunch. She was socializing with six or seven peers and her interactions were appropriate and typical. Based upon her observations, Ms. Root did not identify any needs and felt that her progress could be monitored in the same way as her regular education peers. Tr. 974-976, 1035-1036; District Ex. 9, pp. 48-50.

The results of the BASC assessment of Student's social and emotional status were summarized in the ETR. They involved three teachers' assessments, the Parent's assessment and Student's assessment. All of the teachers' responses showed all areas fell within acceptable ranges, except the Math teacher's response in one area, social adaptive skills, fell in the "at risk" range. Tr. 1023-1026; District Ex. 9, pp. 48-50 and Ex. 10, pp. 681-728.

The Parent's response, while not showing any areas in the "clinically significant" range, did

24

show several areas fell within within the "at risk" range: anxiety, depression, atypicality and attention problems.  Tr. 1022-1023; District Ex. 10, pp. 648-649.

Student's response also showed no areas in the "clinically significant" range, but did show several areas in the "at risk" range: sensation seeking, attention problems and self-reliance. Tr. 1022-1023; District Ex. 10, pp. 667-668. In interpreting the BASC results, Ms. Root looked at the totality of the responses and determined that although there were some "at risk" categories, neither the teachers nor her classroom observation and semi-structured interview indicated any significant need for specific structured intervention targeting any area of concern.  Ms. Root recommended that Student be monitored in those areas, but that regular education supports available for students within the regular education classroom, such as the Pyramid, guidance counselor and state counselor could address any needs. The Social Advocates for Youth Program is available to students for social and emotional support. Student had been counseling through that program since November, 2014. Tr. 1028-1030; District Ex. 45, pp. 462-464, 758-763.

The District did not suspect that Student had any medical condition that affected her education. The ETR report reflected that Student had experienced two concussions, one in September, 2013 and one in October, 2014. Parent expressed that the District should have medically evaluated Student. The District did not receive any medical information from Parent that had been promised at the planning meeting. Neither Parent nor her counsel expressed any disagreement with any portion of the ETR, asserted any portion was inappropriate or that any assessments were missing. Tr. 1043, 1046; District Ex. 9, p. 53 and Ex. 15.

After reviewing the ETR, all the District team members concluded that based upon the information and data gathered that Student was not eligible for special education services or 504 services. The team concluded that Student did not qualify for special education services and did not meet the eligibility criteria based upon the evaluation results. The team recommended that

Student participate in the Academic Resource Center (ARC) next year in high school. Tr. 1044-1045, 1047, 1052-1053; District Ex. 9, p. 56-57 and Ex. 15, p. 78.

At that point a disagreement arose between Parent's counsel and the District regarding the provision of medical information. Parent's counsel indicated he would allow the District to look at documents that reference a medical diagnosis but refused to share a copy of any document or the name of the provider or other specifics. Even if Parent had provided information from a medical provider regarding a diagnosis of anxiety, depression, or PTSD, it would not have changed the psychologist's opinion that Student was not eligible for special education services because the assessments revealed there was no demonstrated need for unique and intensive specially-designed instruction and Student had demonstrated that with additional regular education supports she was able to succeed. Tr. 1043-1044, 1050-1051; District Ex. 15.

Parent and her counsel disagreed with the ETR and requested an independent educational evaluation (IEE) to be paid for by the District and a 504 plan. Tr. 1046.

On July 20, 2015, the District issued a PWN to the Parent summarizing the results of the ETR meeting and the denial of the request for an IEE and a 504 plan. Tr. 1051-1052;  District Ex. 15. On July 21, 2015 the District filed a due process complaint (Case No. SE 3156-2015) seeking a finding that its evaluation was appropriate and that it had properly denied Parent's request for an IEE. District Ex. 3. Parent, through counsel, responded with a letter and attached a one-page document with no author stating diagnoses of anxiety, depressive disorder, adjustment disorder and referenced three concussions and asthma. District Ex. 4.

At the time of the ETR meeting, the District was not aware that Parent had in her possession a neuropsychological evaluation report performed by Akron Children's Hospital, dated May 27, 2015. This document was not disclosed to the District until December 28, 2015. According to this report, Student suffered only two concussions by that date. The

26

neuropsychologist also performed a number of similar assessment used by the District in its evaluation, but earlier versions. Tr. 1055, 1397; Parent Ex. 5, pp. 132-140; District Ex. 59.

On the annual OHSAA form, submitted on July 28, 2015, Parent and Student disclosed that "concussions" had occurred, but the only explanation they added in the section for "explanation" was "had restrictions after concussion." District Ex. 27, p. 161.

On August 24, 2015 Parent filed her due process complaint and on August 26, 2015, the District filed its response to the complaint. District Exs. 1 and 2.

**Access to Records**

On or about April 14, 2015, Parent's counsel sent a Request for Release of School Records to the school that Student attended and a similar request to the Superintendent. The letter included a release signed by Parent on April 8, 2015, authorizing the release of "any and all records in your possession" about Student. The signed release had a an expiration date of 60 days from the date of the signature. District Exs. 5 and 36, pp. 400-401; Parent Ex. 11, pp. 202-204.

Parent had access 24 hours per day seven days a week to Student's grades, absences, and assignment records through the on-line Power School. Tr. 238-239, 797-798, 894-896.

On or about July 5, 2015, the District supplied Parent with a copy of the Student's cumulative file. The District understood the record request to refer to the Student's cumulative file. By letter dated July 13, 2015, Parent's counsel advised that they were seeking "complete distribution of [Student's] educational records" and expressed concerns about missing information, delineating a number of different types of records that had not been produced. Tr. 203; District Ex. 36, pp. 411-412.

On or about July 17, 2015, the District counsel advised Parent's counsel that the previous release expired on June 8, 2015 and they would need an updated release. On or about September 29, 2015, Parent's counsel provided a new release dated September 24, 2015 and the cover letter

27

clarified the release was continuing in nature. District Ex. 36, p. 416.

On November 19, 2015 District counsel sent a disc of additional records to Parent's counsel, and another batch of records were sent on November 30, 2015.  District Ex. 36, p. 757; Parent Ex. 11, p. 208. At no time did Parent request to review records or ask that any meetings be rescheduled due to lack of records. Tr. 205.

By December 28, 2015, Parent had amassed copies of 2,582 educational records. This is the total of the school records in the box of 3,500 documents labeled by Parent and produced at the disclosure conference, excluding Respondent's binder exhibits.

The IHO's finding of fact are approved and are adopted for this state level review, as supplemented or modified here.

## IV. DECISION:

### A. Standard of Review

The standard of review by the state level review officer is one of *de novo* review. 20 U.S.C. §1415(g); 34 C.F.R. §300.514(b)(2)(v); *Thomas v. Cincinnati Bd. Of Educ.*, 918 F. 2d 618, 621 (6th Cir., 1990). In matters of assessing witness credibility and demeanor, deference must be given to the trier of fact, in this case the IHO. *Bd. of Educ. of the City School Dist. of the City of Cincinnati V. Wilhelmy*, 689 F.Supp.2d 970 (S.D.Ohio 2010).

### B. Appeal Issues.

Parent, in her amended Notice of Appeal asserted certain grounds of appeal, previously summarized, but in her brief, identifies certain "substantive issues" as follows: failure to properly evaluate a student can be a denial of FAPE, the school was aware of the issues negatively impacting [Student's] education such as absences, severe anxiety, sleep issues, hearing issues, and concussions yet failed to complete an appropriate evaluation, the District's failure to obtain medical assessments made the evaluation insufficient, and failing to provide [Student] with an IEP

28

denied her a FAPE. Parent also asserts the following procedural violations that amounted to substantive harm: Parent was denied the ability to offer meaningful input and participation, the IHO overstepped her authority when she exercised powers beyond those permitted in the statute, the IHO erred regarding retaliation against [Parent], the IHO erred in determining that the Parent must "request that she be granted access" or that there must be a "denial to access," the IHO erred when stating that the neuropsychological evaluation was an IEE, the IHO erred in requiring unfettered access to medical providers, the IHO should have disclosed a potential conflict and recused herself (abbreviated here), the IHO erred by not allowing Appellant to submit all of the evidence desired at the hearing, the IHO erred by forcing [Parent] to spend money on the hearing, and [Parent] must exhaust her administrative remedies through an IDEA due process hearing and the IHO erred by refusing to allow her to do that (abbreviated here).

A party challenging the terms of a student's educational program bears the burden of proof by a preponderance of the evidence. *Schaffer v. Weast,* 126 S.Ct. 528 (2005).

### 1. Impartiality of IHO

Because Parent bases her appeal in great part on the assertion that the IHO committed numerous procedural errors and was biased against her, it is relevant to consider these issues at the outset, because if Parent prevails on either of these issues, it could affect the consideration of all substantive issues. This review officer does note that Parent did not assert as a ground of appeal in her amendment to her Notice of Appeal any issue about the IHO's lack of impartiality, but because she raises the issue in her brief, it will be addressed.[10]

In support of this assertion, Parent contends that the IHO: 1. should have disclosed a potential conflict and recused herself absent waiver of the conflict since she admitted that she was contacted or retained by opposing counsel for a  non-IDEA due process hearing employment, 2.

---

10 It was challenging for this review officer to correlate the amended grounds of appeal with the argument topics in her brief due to a complete lack of correlation, but it is believed all assertions are covered here.

did not disclose it, and 3. that she should have adhered to the [O]ffice of [E]xceptional [C]hildren's perceived conflict standard that the IHO violated.

The due process hearing officer is required to be impartial and is chosen based on her meeting the Ohio standards of impartiality. O.A.C. 3301-51-05 (K)(8)(d) and (K)(10)(c). She is required to arrive at a written decision based solely on evidence and testimony presented at the hearing. O.A.C. 3301-51-05 (K)(12)(e). Allegations of hearing officer bias and lack of impartiality are rarely successful. An IDEA hearing officer enjoys a presumption of honesty and integrity that may be overcome only by a showing of bias. See, *AM v. Dist. Of Columbia,* 933 F.Supp.2d 193, 61 IDELR 21 (D.D.C. 2013).

The factual basis for Parent's assertions is found in Parent's Motion to Recuse and the IHO's order overruling that Motion. The facts are not in dispute here. It is the interpretation of those facts which is in dispute. What Parent identifies as a "potential conflict" is found in an email stream between the District's counsel (or staff at her law firm) and Parent's counsel in the Summer of 2015 about scheduling a hearing with this same IHO to hear one or more other cases that District counsel and Parent's counsel were involved in. The IHO is not a party to any of those emails. Parent asserts that these were non-IDEA cases, and from the emails they appear to be 504 cases, but the relevance of that assertion is not apparent. In either case the hearing officer is paid by the District and not the parent. Parent's counsel does not raise any opposition in the email stream to this hearing officer serving in the other case(s).

As to the first prong of Parent's contention, it contains a number of inaccuracies. First, there is no showing of a "potential conflict." The fact that this hearing officer, a trained and experienced hearing officer of many years, serves as a hearing officer in other specialized hearings concerning students with disabilities does not violate that regulation or any other IDEA regulation. In her Order, the IHO noted that ODE confirmed to her that IDEA hearing officers can and do,

30

under separate contracts with districts, serve as 504 hearing officers. O.A.C. 3301-51-05(K)(9)(c)(ii). That does not constitute a "potential conflict," or lead to any requirement of recusal or obtaining of waivers of recusal.

The IHO was also not "retained by opposing counsel" as Parent claims. An IHO is retained by a District, not an attorney. As she also states in her Order, she was contacted about serving in that case as the email stream states, but she was not retained by the district involved and, thus, did not serve. Despite knowing that this IHO was not retained in the other case, Parent persists in misstating the facts in her brief. As to the alleged remark of the IHO in defense of her actions being "to simply say that everyone else does it, so she is going to as well," this is completely false and is not supported by the record.

As to the Parent's second prong, not only is there no potential conflict here, there is also no duty to disclose in this case because her potential involvement in the other case(s) is a fact known by Parent and the District, so it is unclear why a "duty to disclose" would be required. A duty to disclose arises regarding an unknown fact, not a known one. If she has no duty to disclose, there can be no violation of such a duty.

As to Parent's third prong, alleging a "perceived conflict" standard that only Parent knows about through an alleged private conversation with staff at the Office of Exceptional Children, this must fail because it is not supported by any reference to the record or the law. Parent even goes so far here as to assert that the Ohio Department of Education, an entity that is not a party to this proceeding, has violated its duty by failing to remove the IHO. Taking Parent's assertion to its logical conclusion, that the removal of hearing officers should be based on a party's "perceived" conflict, whether real or imagined, would result in parties at their whim choosing hearing officer's solely on the likelihood of ruling in their favor. This is not an outcome contemplated by IDEA.

Parent does not support her assertions about the IHO's bias with any facts or law, other than

31

quoting the Ohio regulation on the impartiality of hearing officers, O.A.C. 3301-51-05(K)(10)(c), and stating that the IHO "does not satisfy these basic requirements." Parent does not elaborate further on her assertion that the IHO fails to comply with the regulation, other than to assert she has "employment with schools and school's counsel outside of the ODE." There was no proof offered that this IHO is an "employee" of the District, which would be a conflict. Parent's argument does not have merit and it is concerning that she would persist in her misstatement of the facts on this issue about the other case.

Not only does Parent fail to persuade that the hearing officer was biased but the record shows the opposite. The IHO bent over backward to make sure Parent had a fair hearing, even after her counsel flooded her with motions, objections, scheduling problems, delays in compliance, and interim appeals. The IHO did not err in refusing to recuse herself in this case.

Parent has not carried her burden to show that the IHO was biased against her and the IHO met all requirements of O.A.C. 3301-51-05(K)(10)(c).

**2. Procedural Matters**

The record is replete with examples of Parent challenging the authority of the IHO to manage the procedural aspects of the hearing, as stated above in the Procedural History section. In her brief, in her rambling and unorganized arguments, Parent makes a number of arguments challenging the IHO's procedural rulings and general conduct of the hearing. Parent asserts that the IHO acted outside of the scope of her authority by: ruling on motions, limiting the introduction of evidence, granting the District's motion to compel execution of releases or limit introduction of evidence, requiring unfettered access to [Student's] medical records, requiring Parent to state her issues with more specificity when the only standard should be passing a sufficiency challenge, controlling evidence instead of allowing every disclosed document to be admitted, and forcing the Parent to spend money on the hearing.

32

In support of these assertions, Parent contends that the IHO only has the power to manage her case within the applicable statutes and regulations, specifically R.C. §3323.05(G)(1)(c) and O.A.C. §3301-51-05(K)(11)(a)(ii). R.C. §3323.05(G)(1)(c) states as follows:

> (c ) A proposed resolution of the problem to the extent known and available to the party at the time
>
> A party shall not have a due process hearing until the party, or the attorney representing the party, files a notice that meets the requirement for filing a due process complaint notice.
>
> A due process hearing **shall be conducted by an [IHO] in accordance with standards and procedures adopted by the state board.** A hearing officer shall not be an employee of the state board or any agency involved in the education and care of the child or a person having a personal or professional interest that conflicts with the person's objectivity in the hearing. A hearing officer shall possess knowledge of, and the ability to understand, the provisions of the "[IDEA] of 2004," federal and state regulations pertaining to that act, and legal interpretations of that act by federal and state courts; **possess the knowledge and ability to conduct hearings in accordance with standard legal practice;** and possess the knowledge and ability to render and write decisions in accordance with appropriate standard legal practice. The due process requirements of section 615 of the "[IDEA] of 2004," 20 U.S.C. 1415, apply to the due process complaint notices and requests for due process hearings held under division (G) of this section, including, but not limited to timelines for requesting hearings, requirements for sufficient complaint notices, resolution sessions, and sufficiency and hearing decisions. (Emphasis added).

R.C. 3323.05(G)(1)(c).

This statute gives the IHO the authority to conduct hearings in accordance with standards and procedures adopted by the state board and according to standard legal practice.

A hearing officer's responsibilities are governed by another section, O.A.C. § 3301-51-05(K)(12), which outlines the IHO's responsibility of conducting the hearing in accordance with the requirements set forth by the office of exceptional children, **including, but not limited to:** to

33

notify parties of the time and date of hearings, arrange the disclosure conference, issue subpoenas as requested by the parties, rule on procedural issues presented at the hearing, and arrive at a written decision based solely on evidence and testimony presented at the hearing. Parent relies on only subsection (d) in the context of ruling on access to records issue (to be addressed in the "access to records" section below). (Emphasis added). Parent, in her brief, alludes to the Ohio IHO/SLRO Manual in another context, but overlooks the portions that address a hearing officer's management of the hearing, including her authority to "rule on any prehearing motions as deemed necessary and appropriate by the IHO at any time."

As the IHO notes, "[I]t is well settled that IHO's have the authority to manage their cases so as to achieve their orderly and expeditious disposition." *Stancourt v. Washington City Schools,* 164 Ohio App.3d 184, 841 N.E.2d 812, 830 (Ohio App.10 Dist.2005). Parent thinks this case is wrongly decided and should not be followed. Other IDEA cases are in accord. See,e.g. *Edward S & Virginia S ex rel TS v West Noble Sch Corp,* 63 IDELR 34 (N.D. Ind 3/31/14) (upholding the dismissal with prejudice of a due process complaint based on the parent's attorney violating orders of the hearing officer prohibiting the taping of the pre-hearing conferences where Parent's attorney persisted to tape after the hearing officer's order). But here the issue was not a dismissal of the case at all as the full due process hearing occurred and the IHO issued a decision on the merits.

Parent also cites to a number of Ohio non-IDEA administrative law cases reflecting a curtailment of hearing officer authority in those cases, but these cases are not controlling as there is no assertion that the applicable statutes in those cases contain similar authority as apply to IDEA hearings officers.  These cases are not persuasive.

Recognizing the broad authority of the IHO in the management of the hearing, the specific focuses of Parent will be reviewed. The IHO clearly has the authority to rule on motions, and, in addition, Parent has waived that issue by filing motions during the due process hearing.

The IHO has the authority to limit the introduction of evidence and specify the format of such documentary evidence. This case is particularly illustrative of why the IHO would have the authority to limit the introduction of evidence as the record shows that Parent believed that her 3,500 pages of disclosed documents should have been allowed in as exhibits at the hearing. She does not cite to any portion of the record where she offered her 3,500 pages of disclosed documents into evidence, so this is an issue Parent waived by not raising at the due process hearing. The record shows that, albeit late in the game, she did prepare two exhibit books and those documents were the subject of any relevant evidence rulings by the IHO.

The sole focus of Parent's assertion about the limitation of the evidence arises from the issue of the releases, discussed earlier in the Procedural Section. This matter was addressed in a prior order of this SLRO, dated August 9, 2016, in response to the Parent's request to submit additional evidence during this state level review. That order affirmed the authority of the IHO to limit the introduction of evidence and disallowed such additional evidence, including proposed evidence that violated the IHO's reasonable order to sign the release. Not known at the time of that Order was that the IHO's Order was even more protective of the Parent and Student's privacy because she required any such record produced "would be produced first at the hearing and would be reviewed by the Hearing Officer prior to inspection by the District to alleviate the Parent's professed concerns over relevancy and privacy."

Parent argues that the IHO is limited to prohibiting the introduction of evidence that was not disclosed by the parties within five days of the hearing, pursuant to O.A.C. §3301-51-05(K)(11)(a)(ii). As has been stated, this sub-section pertains to a right of the parties to prohibit the introduction of evidence during a hearing, evidence not disclosed to the other party at least five business days before the hearing. There is no reasonable basis for asserting that this sub-section is the final word on the admission of evidence at a due process hearing nor that it supersedes the right

35

of the hearing officer to manage the hearing. Parent does not contend in her brief that she was prohibited from introducing any evidence because of a late disclosure.

Further, the IHO did not "require unfettered access to [Student's] medical records," as Parent claims. First the only records at issue were records that Parent sought to admit in evidence at the hearing. Second, the IHO gave Parent a choice in response to the District's motion so that the District's right to cross-examine witnesses was preserved. Parent chose to give up the opportunity to offer certain records as evidence and the testimony of one witness rather than sign releases.

It was a foregone conclusion that Parent would not sign the releases as she had refused to submit documents during the evaluation because of certain information contained in those records that she did not want disclosed. She had not changed her mind on this, which is why she wanted to have control over what documents she would offer in evidence. Parent's reluctance to disclose such information overshadowed the interests of Student that should have been the sole focus of this evaluation and hearing.

The IHO could have prohibited Parent from introducing any evidence that was concealed from the evaluation team, particularly based on the narrow issues involved in this case. The actions of the District and the evaluation team should have been determined based upon the evidence before them at the time, not what a party concealed from them and may want to offer months later at a hearing. Parent not only concealed records here, but disclosed their existence to the team, offered them as relevant to the evaluation, and then refused to provide them. In that event, the tangled and costly issue of releases and subpoenas to providers would not have arisen.

The IHO did not act outside the scope of her authority nor did she abuse her discretion by granting the District's Motion to Comple Execution of Releases or in limiting the introduction of such evidence.

The IHO did not err or abuse her discretion in requiring Parent to state her issues with more

specificity instead of allowing Parent to rely solely on the fact that she had survived a sufficiency challenge to the complaint. Parent claims this order was unduly burdensome. The IHO's December 2nd order was a ruling on the Parent's Motion to Bifurcate and the District's Motion to Dismiss filed on November 4, 2015. The District in that motion argued that the Parent's complaint should be dismissed because each and every claim of Parent's was deficient. Parent did not respond to this motion. The IHO did not grant the motion to dismiss but did agree with the District that certain claims were not viable claims for the due process hearing, specifically the 504 claims and the retaliation claim. Based on the fact that Student was not a student with a disability and, after the evaluation, had been found not to be a student with a disability, the IHO found that she did not have jurisdiction over the bullying and harassment claim, a claim that could be viable in a different context.

Instead of dismissing the other claims, the IHO directed Parent to file at the disclosure conference an amended list of issues with specifics instead of her general allegations such as "student was denied FAPE." This order was well within her discretion. Any narrowing of issues enables parties to better prepare and should enable the hearing to proceed in a more focused and economical manner, which benefits both parties.

The standard for weighing a sufficiency challenge is a different, less stringent standard than a hearing officer's discretion to clarify issues for the due process hearing. In a sufficiency challenge, a hearing officer looks at the face of the complaint and determines whether it meets the minimal requirements of a complaint. O.A.C. 3301-51-05(K)(8)(b) and (e). Parent did not show why such an order related to preparing a party for the hearing could be characterized as unduly burdensome. The IHO did not act outside of her authority and did not abuse her discretion in requiring Parent to state her issues with more specificity.

Finally, Parent's contention that the IHO forced Parent to spend money on the hearing by

37

requiring her to pay for copies of exhibits for herself, the witness, and opposing counsel and ordered them to be shipped to the District, all in violation of O.A.C. § 3301-51-05(K)(16). Costs of counsel are specifically excluded in this section. Parent does not carry her burden on this issue, because if Parent has an issue about reimbursement of costs that are not included in "costs of counsel" she has not identified any place in the record where that issue was properly preserved by a ruling of the IHO. Thus, this review officer cannot rule on the merits of this issue.

Parent has not shown that the IHO denied her any procedural protections or made any procedural errors, or abused her discretion in procedural rulings. The record showed that the IHO granted Parent the opportunity to present her case in compliance with state and federal regulations.

### 3. Child Find

A central substantive issue in the due process hearing is whether the District violated its Child Find obligation under IDEA. Child Find refers to the obligation of states and local school districts to identify, locate, and evaluate all children residing within their jurisdictions who either have or are suspected of having disabilities and may need special education as a result of their disabilities. 20 U.S §1412(a)(3)(A); 34 C.F.R. §§300.111(a) and (c); O.A.C. §3301-51-03.

Upon receipt of a request for an evaluation by a parent, IDEA requires the school district of a student's residence to either obtain parental consent for an initial evaluation or provide to the parent prior written notice stating that the school district does not suspect a disability and will not be conducting an evaluation. O.A.C. 3301-51-06(B)(3). In this case Parent did not request an evaluation. There had been no prior request for a MFE for Student since her enrollment in the District in kindergarten. Instead, Parent filed a due process complaint, and that led to an evaluation. IDEA does not contemplate that evaluations will be commenced by a due process complaint in the absence of any request for an evaluation. 20 U.S.C. 1414(a)(1)(B).

In order to sustain a procedural violation of Child Find, Parent must show that the district

38

"overlooked clear signs of disability and were negligent in failing to order testing, or that there was no rational justification for not deciding to evaluate." *Bd. of Fayette County, KY. v. L.M.,* 478 F.3d 307, 313 (6ᵗʰ Cir. 2007).  Parent did not carry her burden to establish such a violation.

The District did not have to evaluate Student based on the absence of any suspicion or reason to suspect by the District that Student was a Student with a disability, but did decide to grant Parent's request and evaluate Student. The result of that evaluation was that Student was not identified as a student with a disability.

Parent argues that the District was aware of Student's issues. Yes, the District was aware of known issues. The District was aware that Student had suffered two concussions, but was a capable regular education student who tested well, generally earned average to above average grades, was not a behavior problem, and responded quickly and well to short-term interventions available to all general education students. Parent's expressed concern during the seventh grade was about her daughter's concussion early in that school year. That fact alone would not cause a district to suspect the child has a disability and did not in this case. Student athletes, particularly as they mature, face increased risk of injuries based on increased competitiveness and physical strength factors. Other than that incident, seventh grade was a seemingly typical year for Student. She earned decent grades, did well on her assessments and performed on all her sports teams, with some minor sit-outs due to the September concussion and a minor injury that side-lined her a bit in the Spring.

In eighth grade, Student experienced a volleyball-related concussion in October, resulting in a recommendation by a neurologist that she attend only half days for about a week and have accommodations or modifications to her work. Parent reported her to be a little depressed and overwhelmed as a result. Children who experience concussion(s) and emotional problems are among the total student population, disabled and non-disabled. Those facts alone would not cause a

39

district to suspect the child has a disability and did not in this case.

During this grade Student also had inconsistent homework assignments, a slight lowering of her grades from the prior year, and an increase in absences (to 26 this year), many of them parent-excused. The District sent Parent a form letter warning her about the level of Student's parent-excused absences. Within about a week of receiving that letter, Parent filed her first due process complaint.

Parent did not prove that any of these facts, alone or together, were signs of disability or should trigger a suspicion that Student was disabled. Student was released to return to sports in November, teachers understood that her absences and half-day attendance recovering from the Fall concussion, along with her inconsistency in homework completion, affected her grades negatively, but the teachers offered interventions that are offered to regular education students and Student responded well to them. Another significant factor that did not cause Student's grades to be a particular concern to the District was the switch to the more rigorous curriculum, the Common Core, that coincided with this school year. Also, Parent's portrayal of Student's emotional problems did not correlate with the District's observations of Student at school.

Parent in her brief, as the District points out, adds three factual assertions about Student for the first time: severe anxiety, sleep issues and hearing issues. These alleged conditions are disregarded in this review.

School districts must be vigilant to mental and emotional health issues that children may experience. School attendance or unusual changes in school attendance can be an indicator of a serious problem, including of problems in the student's home. This may or may not be a special education issue, but such issues should be watched and investigated. In this case, the school had no reason to suspect Student had emotional problems. The District was watching Student and her attendance issues, causing the District to send Parent a letter that resulted in a due process

40

complaint.

The District met its Child Find obligations.

All of the IHO's findings of fact are supported by the record and have been adopted by this review officer, as supplemented and modified here. Further, the IHO's conclusions of law that the District, at no time prior to evaluating Student, had reason to suspect that Student was a student with a disability under O.A.C. §3301-51-01(B)(10) and that the District fulfilled its Child Find obligations under O.A.C. §3301-51-03 are not contrary to state or federal law.

### 4. MFE/ETR

The other central substantive issue for Parent is that the MFE was not appropriate. Parent asserts numerous reasons that she believes the MFE was not appropriate: because data from interventions was not marked on the planning form, the District stopped collecting data in the third quarter, all categories of disability were not looked at, a medical consultation was encouraged on a continuing basis, it did not comport with O.A.C. §3301-51-06(E)(3)(h), the IHO failed to consider O.A.C. § 3301-51-06(F)(1)(b)(vi) and how her disabilities impact her ability to participate at school and failed to consider her absences. Further, Parent contends that [the team] did not include people familiar with Student's emotional struggles, did not seek information about previous interventions used, refused to consider Parent's input and denied her meaningful participation, did not consider psychological services, counseling services or medical services for diagnostic or evaluative purposes, in violation of 3301-51-01(B)(54), failed to obtain a medical assessment, as the districts are required to conduct medical evaluation under OHI, TBI and ED categories. Parent asserts that the deficits caused her substantive harm.

Although the District was under no obligation to evaluate Student, once the District undertakes to do so, it bears the burden to show that the evaluation was appropriate. O.A.C. §3301-51-06(B). Noticeably absent from Parent's contention about the MFE are any claims that the actual

ETR assessments and summaries were deficient. This review officer, thus. will not review the validity of the content of the ETR, but will address Parent's claims about what is missing from the ETR.

The evaluation team met to consider the format of the evaluation and the team concluded that Parent's concerns arose from Student's experience of concussions, and the resulting affect on her physiologically and emotionally. During this planning meeting, the team agreed to evaluate her in the areas of OHI, TBI and ED. The only member of the team that suspected that Student had a disability was Parent. Student was described consistently by her teachers as a student with solid academic abilities, positive social interactions, and appropriate emotional responses.

In conducting the evaluation, the school district must:

(a) Use a variety of assessment tools and strategies to gather relevant functional, developmental, and academic information about the child, **including information provided by the Parent**, that may assist in determining

(i) whether the child is a child with a disability as defined in paragraph (B)(10) of Rule 3301-51-01 of the Administrative Code; and

(ii) The content of the child's [IEP], including information related to enabling the child to be involved in and progress in the general education curriculum (or for a preschool child to participate in appropriate activities);

(b) Not use any single source of information such as a single measure or score, as the sole criterion for determining whether the child is a child with a disability and for determining an appropriate educational program for the child; and

(c) Use technically sound instruments that may assess the relative contribution of cognitive and behavioral factors, in addition to physical or development factors.

O.A.C. §3301-51-06(E)(2). (Emphasis added).

"Serious emotional disturbance" (ED) is one of the disabilities under IDEA.[11]  OAC 3301-

---

11 This section states that the disability "serious emotional disturbance" shall be referred to in this rule as "emotional disturbance".

51-01(B)(10). This disability is defined as a condition exhibiting one or more of the following characteristics over a long period of time and to a marked degree that adversely affects a child's educational performance:

    (a)    An inability to learn that cannot be explained by intellectual, sensory, or health factors.

    (b)    An inability to build or maintain satisfactory interpersonal relationships with peers and teachers.

    (c)    Inappropriate types of behavior or feelings under normal circumstances.

    (d)    A general pervasive mood of unhappiness or depression.

    (e)    A tendency to develop physical symptoms or fears associated with personal or school problems.

    (f)    Emotional disturbance includes schizophrenia. The term does not apply to children who are socially maladjusted, unless it is determined that they have an emotional disturbance under paragraph (B)(10)(d)(v) of this rule.

O.A.C. 3301-51-01(B)(10)(d)(v).

"Other health impairment" is defined as follows:

[OHI] means having limited strength, vitality, or alertness, including a heightened alertness to environmental stimuli, that results in limited alertness with respect to the educational environment, that:

    (a)    Is due to chronic or acute health problems such as asthma, attention deficit disorder or attention deficit hyperactivity disorder, diabetes, epilepsy, a heart condition, hemophilia, lead poisoning, leukemia, nephritis, rheumatic fever, sickle cell anemia, and tourette syndrome; and

    (b)    Adversely affects a child's educational performance.

O.A.C. § 3301-51-01(10)(B)(10)(d)(x).

"Traumatic brain injury" is defined, in pertinent part, as follows:

[TBI] means an acquired injury to the brain caused by an external physical force or by other medical conditions, including but not limited to stroke, anoxia, infectious disease, aneurysm, brain tumors

43

and neurological insults resulting from medical or surgical treatments. The injury results in total or partial functional disability or psychosocial impairment or both, that adversely affects a child's educational performance. The term applies to open or closed head injuries, as well as to other medical conditions that result in acquired brain injuries. The injuries result in impairments in one or more areas such as cognition; language; memory; attention; reasoning; abstract thinking; judgment; problem-solving; sensory, perceptual, and motor abilities; psychosocial behavior; physical functions; information processing; and speech. The term does not apply to brain injuries that are congenital or degenerative, or to brain injuries induced by birth trauma. * * *

O.A.C. 3301-51-01(B)(10)(d)(xii).

Based on the presenting concerns of Parent at the planning meeting, even without considering the conflicting teacher observations about Student, it is difficult to see how any of these definitions would be met. ED requires an inability to learn "over a long period of time and to a marked degree that adversely affects a child's educational performance." OHI specifies health conditions that do not exist here. The TBI characteristics do not seem applicable to a student who had two concussions, one each in the Fall of seventh and eighth grades, and seemed to recover fully and continued to play sports for the rest of both years after short intervals of restrictions. The duly constituted evaluation team, however, did agree to evaluate in these agreed-upon areas of inquiry. There were no other categories of concern by any team member.

Parent, who was represented by counsel at both the planning meeting and the ETR meeting, and whose counsel was secretly recording the meetings, complains that data from interventions was not marked on the planning form, that evaluators did not seek information about previous interventions used, and the MFE was further deficient due to the District not collecting data in the third quarter. These contentions lack merit for several reasons. First, the Parent and her counsel could have noticed that missing check on the planning form and asked for it to be checked during the planning meeting or, as late as the ETR meeting. Raising it for the first time in a due process hearing is too late. Second, it exalts form over substance. Even though not marked on the form,

Student's response to intervention (RTI) was considered during the evaluation and, thus, the failure to check it on the form did not affect the evaluation. Third, the record was devoid of any proof that the District failed at any time to collect RTI data. Student responded positively to the interventions as the ETR revealed.

Parent argues that all categories of disability were not looked at and that IDEA requires that all disabilities are looked at during every evaluation, citing to a Ninth Circuit case, *E.M. v. Pajaro Valley Unified Sch.Dist.*, supportive of such a proposition.[12] This case is not supportive. The case stands for the proposition that a child may "seek to" qualify under more that one category, that a particular condition may possibly qualify a child under more than one of the eligibility categories, and that districts, in exercising their child find duties, should consider a child's particular condition under more than one eligibility category as may be appropriate. *Id.*. That is exactly what the District did here. The team listened to the contribution of all team members and, based on Parent's concerns alone, decided to evaluate Student under three possible eligibility categories. Parent did not request that Student be evaluated under any other category or object to these three.

Parent faults the District for not obtaining a medical evaluation of Student, claiming that districts are required to conduct medical evaluation under OHI, TBI and ED categories and failed to, in violation of O.A.C. §3301-51-06(E)(3)(h). This section states that "medical consultations shall be encouraged on a continuing basis, especially when school authorities feel that there has been a change in the child's behavior or educational functioning or when new symptoms are detected." This section does not require medical evaluations of any child suspected of a disability. In appropriate cases, medical consults are encouraged for children with disabilities, not mandated. The District is not obligated to refer for a medical consultation, much less an evaluation, where the child was not suspected of a disability. Assessments were done to assess possible side affects that

---

12 758 F.3d 1162 (9th Cir. 2014)

can result from concussions. Physically, there were no medical complaints brought up in the evaluation team planning meeting, nor does Parent assert here what such a medical evaluation would show.

What is required in an initial evaluation is that existing evaluation data will be reviewed, including evaluations and information provided by the Parent. O.A.C. §3301-51-06(F)(1)(a)(i). The requirement of Parent-provided data in an evaluation appears elsewhere in the regulations. O.A.C. §3301-51-06(E)(2)(a). Parent had such information and had a number of opportunities to share it. First, Parent and her counsel pledged at the planning meeting to provide medical records or other documents related to the diagnoses reported by Parent. The planning team relied on that pledge.

After the planning meeting, Parent's counsel informed the District in June that a comprehensive medical report would be available on June 9, 2015 that would document Student's four concussions and emotional health issues, including suicidal ideations, and TBI. When this report was not forthcoming, Parent's counsel later stated that it would not be provided to the District because of "confidential issues" that "the family does not desire to share" and, further, counsel discouraged the District from talking to Student about her suicidal thoughts. Because Parent failed to follow through with her pledge to submit any of the alleged private evaluative data to the team, that information could not be considered. Later, at the ETR meeting, Parent's counsel indicated he would allow the District to look at documents that reference a medical diagnosis but refused to share a copy of any document or the name of the provider or other specifics.

It is unknown whether any of this information would have changed any aspect of the ETR. The team justifiably relied on the results of the comprehensive evaluation and this evaluation team concluded that, even if Student was diagnosed with depression, anxiety, PTSD or TBI, Student was not eligible for special education services because the assessments revealed there was no

46

demonstrated need for unique and intensive specially-designed instruction and Student had demonstrated that with additional regular education supports she was able to succeed.

Parent's claim that the IHO failed to consider O.A.C. § 3301-51-06(F)(1)(b)(vi) lacks merit because this sub-section applies to a student who has a disability as it refers to "the student's IEP." Parent fails to cite to the more pertinent sub-section (i) of that section that refers to the first determination that must be made under this section, "whether the child is a child with a disability." O.A.C. § 3301-51-06(F)(1)(b)(i).

The Parent did not show that the ETR failed to look at how her disabilities impact her ability to participate at school because she was not found to have disabilities. Parent did not prove that the team failed to consider her absences, as her teachers gave input that Student's absences, many of which were parent-excused, were impacting her grades. Parent failed to prove that the team did not contain people familiar with Student's emotional struggles. Parent was a member of the team. If Parent had any objection to the team or that someone was missing, the time to express those thoughts would have been at the planning team.

Finally, Parent did not prove that the District refused to consider Parent's input and denied her meaningful participation. "Meaningful participation" under IDEA refers to the District's obligation to allow parents of a child with a disability an opportunity to participate in meetings with respect to the "identification, evaluation, and educational placement of the child" and the provision of FAPE to the child who has a disability. 34 C.F.R. §300.501(b)(1). The only reason the team agreed to do an evaluation was because Parent filed a due process complaint, requesting one. The team then listened to Parent explain her concerns, planned the evaluation solely based on those concerns, obtained Parent's input on completion of the BASC assessment form, expected additional data that Parent promised the team but Parent changed her mind about that, and then reviewed all results with her at the ETR meeting. Merely because the evaluation did not come out

47

the way Parent predetermined it would is not proof of a denial of her meaningful participation. Parent cannot point to one fact that supports such a contention.

Parent also asserts that the ETR was not appropriate because it did not consider psychological services or counseling services for diagnostic or evaluative purposes, in violation of 3301-51-01(B)(54). These are related services. Even had the Student been determined to meet the criteria of ED, OHI or TBI, if she required only a related service, such as psychological services or counseling services, and did not require special education, she would not be considered a child with a disability under IDEA. O.A.C. § 3301-51-01(B)(10)(a). The team considered and assessed Student's psychological status through the BASC that Parent contributed to and through Ms. Root's interview and observation. Other data from Parent was not forthcoming.

Parent asserts that the ETR deficits caused her substantive harm. In order to get to that issue, Parent would have to show that the ETR was inappropriate. She has not carried her burden on that.

Parties to these proceedings – school districts and parents alike – have an obligation both to participate and to act in good faith. Good faith cooperation in essential to the IDEA process. IDEA requires team-based decision-making and parents are included on the teams. All team members are held to the same good faith standard. See, *New Mexico Public Educ. Dept.*, 105 LRP 44668 (LEA NM 2004), citing to *Daniels v. San Francisco Unified School Dist.*, 34 IDELR 143 (U.S.D.N. Cal. 2001); *S.M. v. Weast*, 240 F.Supp.2d 426, 436 (D.Md. 2003); *Friedman v. Montgomery County Board of Educ.*, 24 IDELR 654 (U.S.D. Md. 1996); *Epsom Sch. Dist.*, 31 IDELR 120 (SEA N.H.1999); *Baltimore City Public Sch.*, 23 IDELR 152 (SEA Md.1995); and *Caroline T. v. Hudson Sch. Dist.*, 915 F.2d 752, 16 IDELR 1343 (1st Cir. 1990). Filing due process complaints in order to get Student evaluated rather than asking the school for an evaluation and secretly taping team meetings show an us versus them strategy that undercuts the good faith standard.

48

All of the IHO's findings of fact are supported by the record and have been adopted by this review officer, as supplemented or modified here. Further, the IHO's conclusions of law that the District's evaluation of Student and its ETR fully complied with O.A.C. §3301-51-06 and that Student is not a student with a disability as defined by O.A.C. §3301-51-01(B)(10) are not contrary to state or federal law.

### 5. IEE

Parent in her amended grounds of appeal states that Parent disagrees with the IHO's decision whether the District's denial of the IEE was proper. In her brief, however, the only mention of an IEE issue is related to the IHO claiming that the neuropsychological evaluation conducted by Akron Children's Hospital on May 27, 2015 was an educational evaluation when it was actually a medical assessment. This was mentioned once by the IHO in the section of her Decision pertaining to the District's motion for sanctions (which is not an issue in this appeal) when she commented on the "outright misrepresentation to the IHO and opposing counsel as to existence of an IEE obtained by the Parent five months previously." Decision, p. 58-59. The IHO deferred to the federal court on the issue of sanctions as she did not find that she had the authority to so rule. This comment by the IHO is not germane to the issue raised by Parent as a ground of her appeal. Because Parent chooses not to discuss that issue in her brief, that issue is deemed waived.

Even if Parent had addressed the issue of the District's denial of the request for IEE in her brief, it would lack merit. Because the ETR was found to be appropriate, Parent is not entitled to a publicly-funded IEE.

The IHO did not err in her findings of fact related to Parent's claim of a denial of an IEE, as supplemented or modified here. Further, the IHO's conclusion of law that the District's refusal to publicly fund the Parent's request for an IEE was proper under O.A.C. §3301-51-05(G)(2) does not violate state or federal law.

**5. Denial of FAPE**

Parent disagrees with the IHO's decision regarding FAPE. Her contention about FAPE flows from her contentions about the inappropriateness of the evaluation. A free appropriate public education (FAPE) is required to be provided by states to all children with disabilities residing in the state. 20 U.S.C. §1412(A)(1)(a); 34 C.F.R. 300.17. FAPE for disabled children is provided pursuant to an IEP that provides special education and related services geared to the unique needs of the child that result from his disability.  20 U.S.C. §1412(a)(4).

The IHO determined that Parent must establish that the MFE was inappropriate and that Student is a child with a disability before Parent can raise a denial of FAPE claim. Because the IHO in her conclusions of law found that the MFE was appropriate and that Student is not a student with a disability, there can be no consideration of a FAPE claim. Based on the resolution of the MFE and Child Find issues, Student was not entitled to a FAPE and, thus, could not be deprived of FAPE.

The IHO did not err in her rulings on Parent's denial of FAPE claim.

**6. Retaliation**

Parent disagrees with the IHO's decision regarding retaliation, contending that the IHO failed to recognize the validity of a retaliation claim in an IDEA case and, further, that Parent established a retaliation claim by showing that the District provided a direct threat to Parent in the form of prior written notices that contained threats to sue the Parent for actions related to Student. This "threat" consisted of language at the bottom of one PWN informing Parent about the District's ability to recover its fees in court in certain cases pursuant to 20 U.S.C. 1415(i)(3)(B)(II)(III)."

In support of the first prong of her argument, she cites to a number of cases that she asserts recognize a new type of retaliation claim. These cases do not support Parent's claim because they

all hinge on a common thread of being brought on behalf of children with disabilities and, as such, these children may be entitled to special protections from retaliation for asserting their rights under a variety of federal laws. In this case the child does not have a disability and is not entitled to such special protections. In addition, these cases are not conclusive on the issue of finding a separate claim of retaliation under IDEA. As the IHO ruled, "after a careful review of the case law cited by Parent, it appears that what the courts have long recognized is that conduct that may be described as "retaliatory" can affect, impede or impair a disabled child's right to a FAPE. See e.g. *Grine v. Sylvania City School District Bd of Educ,* 47 IDELR 225 (Ohio Ct. App. 2007) (recognizing that failure to follow an IEP in retaliation for filing a due process request was a valid claim under IDEA).

The IHO, through her pretrial order, ruled that although she had no jurisdiction over a separate retaliation claim under IDEA, if the alleged retaliatory conduct impacted Child Find or the conduct of the MFE, it could be relevant. She did dismiss the separate claim of Parent claiming that the District unlawfully retaliated against [Student] in violation of IDEA and Section 504.

Implicit in the IHO's conclusions of law is her determination that Parent did not carry her burden to show any such retaliation related to the two issues, Child Find or in the conduct of the MFE. The second prong of her argument asserts that the "retaliation" against her was the "threat" contained in the PWN in response to her initial due process complaint.

Despite Parent's misstatement in her brief that the District included this language in its PWN on more than one occasion, although irrelevant to the issue at hand, the District included this language only once, on the PWN dated 4/24/15. That was the PWN that was sent in response to the filing of Parent's initial due process complaint that is not even the subject of this appeal, as Parent withdrew that complaint.

IDEA permits the district courts to award attorneys' fees, in its discretion, to a prevailing

51

party who is a state or local educational agency against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation, or against the attorney of a parent who continued to litigate after the litigation clearly became frivolous, unreasonable or without foundation, or against the attorney or the parent if the complaint was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation. 20 U.S.C. 1415(i)(3)(B)(II) or (III); 34 C.F.R. §300.517. See also, O.A.C. §3301-51-05.

The basis of Parent's retaliation claim is solely the District's use of language from IDEA, lawfully used by the District to caution parents about filing and pursuing due process complainants that are frivolous, unreasonable or without foundation.  Such language is also found in Ohio's procedural safeguards required to be sent to Parents after the filing of a complaint. O.A.C. §3301-51-05(I)(1)(b) and (3)(m). This notice is also found in Whose IDEA is This? at page 45. As the District contends, because the law requires school districts to warn parents about this IDEA provision, notifying them of that risk cannot be considered retaliatory. This retaliation claim, based solely on this notice, as Parent contends in her brief, may be such a frivolous claim.

Parent included three retaliation claims in the present due process complaint, all seeming to be related to this caution in the District's April PWN. In her brief Parent offers the much later testimony of the coordinator of pupil services as a significant fact that supports her claim. The job of an IDEA hearing officer and review officer is to ascertain the relevant facts, make findings of fact, and apply the law to those facts. Quoting only part of an individual response by one witness to one question to support a party's claims, and particularly one such as Mr. Jakab's, obviously made in an inept but innocuous, joking manner, does not assist the hearing officer in the assigned tasks. Mr. Jakab's comment has not been ascertained as a relevant fact by either the IHO or this review officer.

All of the IHO's findings of fact are supported by the record and have been adopted by this review officer, as supplemented or modified. Further, the IHO did not err in her dismissal of Parent's separate retaliation claims in her pre-trial orders and her implicit determination that Parent failed to prove that the District retaliated against her or Student in any way in conducting the evaluation or deciding that Student is not a child with a disability under IDEA.

### 7. Access to Records

Appellant disagrees with the IHO's decision regarding access to educational records. In her brief, she addresses the records issue under two topics: the topic claiming a denial of meaningful input and participation and the topic asserting the IHO erred in determining that the parent must "request that she be granted access" or that there must be a record of the "denial to access." Both topics are linked, as under both Parent contends she was deprived of the opportunity for meaningful input and participation by being denied access to all of [Student's] records. In neither section of her brief does she identify what records she was deprived of, nor how she was affected by such a deprivation other than in these general terms. She simply cites to the pertinent law on access to educational records. The law is not in dispute.

A review officer must know what violations of the applicable law occurred and how the complaining party was affected by such a deprivation. According to this record, Parent had 3,500 pages of documents about Student in his possession before the start of the hearing, at least 2,582 pages of which were identified by Parent as school records.

Even if Parent had shown any violation of her right to access to records, a procedural violation of IDEA is not per se a denial of FAPE. Rather a school district's failure to comply with the procedural requirements of the Act will constitute a denial of FAPE only if such violation causes substantive harm to the child or his parents. *Nack v. Orange City Sch. Dist.*, 454 F.3d 604, 612 (6th Cir. 2006), quoting *Knable ex. Rel. Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 765 (6th

53

Cir. 2001).

All of the IHO's findings of fact about access to educational records are supported by the record, as supplemented or modified here. Further, the IHO did not err in her conclusion of law that the District provided Parent access to education records as required under O.A.C. §3301-51-04(D) and that Parent failed to establish that any failure to receive copies of education records infringed her ability to participate in the ETR planning meeting, ETR meeting or due process hearing.

### 8. Bullying/Harassment

One of Parent's amended grounds of appeal was that she disagreed with the decision regarding unwanted bullying and harassment. In her brief she fails to mention that ground. That issue is also deemed waived.

### 9. Exhaustion

Parent also asserts she must exhaust her administrative remedies through an IDEA due process hearing prior to raising non-IDEA claims and the IHO erred by refusing to hear those claims, specifically her 504 claims and ADA claims. Later in her argument she inconsistently states the "504 and ADA claims are the exact same facts that were elicited in the state administrative due process proceeding."

When claims, such as 504 and ADA claims, relate to the provision of the child's education and can be remedied through IDEA procedures, exhaustion through the IDEA procedures is required. *Fry ex rel EF v. Napoleon County Schs,* 788 F.3d 622, 65 IDELR 221 (6th Cir. 2015), *cert. granted,* 116 LRP 27666, 136 S. Ct. 2540 (2016) (involving claims of violations of the ADA and the Rehabilitation Act and state disability law but not IDEA claims). Exhaustion ensures that complex factual disputes over the education of disabled children are resolved, or at least analyzed, through specialized local administrative procedures. *Id.* 625.

54

Parent chose the IDEA procedure to litigate all claims and, consequently, has exhausted her various claims through the local administrative procedure invoked here. The IHO properly ruled that she does not have jurisdiction over Parent's Section 504 claims or other non-IDEA federal claims. The due process hearing jurisdiction under IDEA is limited to matters relating to the identification, evaluation or educational placement of a child with a disability, or the provision of FAPE to the child. O.A.C. 3301-51-05(K)(7)(a)(i). Her dismissal of theses other federal claims constitutes exhaustion of these claims.

These dismissals by the IHO of Parent's Section 504 claim, ADA claim or any other federal claim were not procedural errors, were not contrary to law and have not been shown to prejudice Parent's ability to fully exhaust her administrative remedies prior to bringing such claims in court. This review officer affirms these rulings of the IHO.

## V.    CONCLUSION

Based on the findings of fact, and considering the Petitioner's argument and relevant law, this review officer concludes that the IHO properly concluded that the Parent failed her burden of proof to establish that the District violated IDEA.

In conclusion:

The District fulfilled its Child Find obligations under O.A.C. §3301-51-03.

The District's evaluation of Student fully complied with O.A.C. §3301-51-06.

The District's ETR fully complied with O.A.C. §3301-51-06.

The refusal of the District to publicly fund the Parent's request for an IEE was proper under O.A.C. §3301-51-05(G)(2).

Student is not found a student with a disability as defined by O.A.C. §3301-51-01(B)(10).

The District provided Parent access to education records as required under O.A.C. §3301-51-04(D)(2).

Parent failed to establish that any failure to receive copies of education records infringed her ability to participate in the ETR planning meeting, ETR meeting or due process hearing.

The IHO did not err in dismissing Parent's separate retaliation claim.

The District is a prevailing party in cases SE 3156-2015 and SE 3168-2015 pursuant to 20 U.S.C. §1415(i)(3)(B)(II) and O.A.C. §3301-51-05(K)(18).

The IHO Decision is affirmed.

Monica R. Bohlen 0017983
State Level Review Officer
10 Judith Street
Charleston, SC 29403
(513) 324-3954

## CERTIFICATION OF DECISION AND ORDER

I, Monica R. Bohlen, am a State Level Review Officer (SLRO), for the Ohio Department of Education (ODE). I have served as a SLRO in the consolidated matter of _____ and the Solon City School District, SE 3156-2015 and SE 3168-2015. I hereby certify that the attached document is a true, accurate, and complete copy of the Final Decision and Entry which I issued on November 7, 2016, in the matter of the State Level Review regarding _____ and the Solon City School District.

Monica R. Bohlen
State Level Review Officer (SLRO)

November 7, 2016
Date

56

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been served upon Parent, 6611 Edgemoore Avenue, Solon, OH 44139, Joseph Regano, Superintendent, Solon City School District, 33800 Inwood Drive, Solon, OH 44139, Daniel Bache, Attorney for Parent, 270 S. Cleveland Massillon Road, Fairlawn, OH 44333 and Kathryn Perrico and Lisa H. Woloszynek, Attorneys for the District, Walter Haverfield, LLP, 1301 East Ninth Street, Cleveland, OH 44902, by ordinary U.S. Mail and electronically to counsel on this 7th day of November, 2016.

Monica R. Bohlen
State Level Review Officer (SLRO)

57

## NOTICE OF OPPORTUNITY TO BRING CIVIL ACTION TO APPEAL DECISION OF STATE LEVEL REVIEW OFFICER

If you are not satisfied with the findings and decision of the state level review officer, you have the right to bring a civil action to appeal the decision, in writing, under Revised Code Section 3323.05(H) and Rule 3301-51-05(K)(17). You may file your civil action:

a.   In the court of common pleas of the county in which the child's school district of residence is located within **45 days** of notification of the order of the state level review officer, under Chapter 119. of the Revised Code, as specified in Revised Code Section 3323.05(H), **or**

b.   In a district court of the United States within **90 days** from the date of the decision of the state level review officer regardless of the amount in controversy, as specified in 20 U.S.C. 1415(i)(2) and 34 C.F.R. 300.516.

### *Filing in Common Pleas Court*

If you bring your civil action in Ohio common pleas court, within the **45 days** of notification of the order of the state level review officer, you must file:

1. A Notice of Appeal setting forth the order being appealed from and stating that the SLRO's order is not supported by reliable, probative, and substantial evidence. If you wish, you may provide detail regarding the grounds for your appeal.

2. The Notice of Appeal must be filed with **both** the clerk of the court of common pleas and the Ohio Department of Education **within the 45 day timeline.** The address for the Ohio Department of Education is:

> Ohio Department of Education
>
> Office for Exceptional Children
>
> Procedural Safeguards Section
>
> 25 South Front Street, Mail Stop #202
>
> Columbus, Ohio 43215-4183

3. You must mail a copy of the notice of appeal to the other party in the due process hearing.

### *Filing in Federal District Court*

If you choose to bring a civil action in the United States district court, **within 90 days from the date of the decision of the SLRO,** you must file your civil action in accordance with the court's requirements. You should call the clerk for the United States district court to determine that court's filing requirements.